UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ENVIRONMENTAL BIOTECH, INC.,

        Plaintiff,

v.                          Case No. 2:03-cv-124-FTM-33SPC

SIBBITT ENTERPRISES, INC.,
LARRY SIBBITT, and
VICKI L. SIBBITT,

        Defendants.

_____/

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

     This matter came before the Court for a non-jury trial
on August 26, 2008.  (Doc. # 173).  During the non-jury
trial, Environmental Biotech, Inc. ("EBI") orally moved to
strike the testimony of Kenton Thompson (Doc. # 176) and
also moved for a judgment on partial findings pursuant to
Rule 52(c), Fed. R. Civ. P. (Doc. # 177).  Subsequently, the
parties made their written closing arguments and submitted
proposed findings of fact and conclusions of law.  (Doc. ##
182, 183).  Having considered these arguments as well as the
complete record, and after hearing the testimony and
weighing the evidence, the Court makes the following
findings of fact and conclusions of law.  To the extent that
any of the findings of fact might constitute conclusions of

law, they are adopted as such.  Conversely, to the extent that any conclusions of law constitute findings of fact, they are adopted as such.  For the reasons stated below, the Court finds that judgement should be entered reflecting that Plaintiff EBI shall take nothing by its complaint and that Defendants, Sibbitt Enterprises, Inc. ("Sibbitt Enterprises"), Larry Sibbitt ("Mr. Sibbitt"), and Vicki L. Sibbitt ("Mrs. Sibbitt"), shall take nothing by their counterclaim.

## I.    Findings of Fact

### A.    Introduction and Procedural History

#### 1.    The Parties' Franchise Relationship

This lawsuit arises from a franchise relationship involving EBI and Sibbitt Enterprises, along with its shareholders, Mr. Sibbitt and Mrs. Sibbitt.  By written franchise agreement, EBI licensed the use of its trademarks and business system to persons who would provide bioremediation services to restaurants and other commercial businesses.  These bioremediation services typically used bacteria to remove grease from traps and other waste containment systems at customer sites.  Mr. Sibbitt, through

2

his company, Sibbitt Enterprises, owned two of these franchises, having territories in Florida the parties refer to as the "Space Coast" and the "Gold Coast."  Mr. Sibbitt commenced these operations in the early 1990's.

The transaction of business between the parties (involving, among other things, the sale and supply of bacteria product for use in the business and payment of franchise royalties to EBI) was conducted without substantial incident for approximately seven years.  During this time, the two franchise agreements were renewed for five year terms expiring in 2001 and 2002.

### 2.   Non Renewal of the Franchises

Beginning in the year 2000, a series of disagreements occurred between the parties.  In the following two years, during which time the franchise agreements were to expire, they were not again renewed.  Specifically, one franchise agreement, for the "Space Coast" territory, expired in October of 2001.  After this expiration, Sibbitt Enterprises, with EBI's consent, continued to provide bioremediation services to the "Space Coast" territory customers under the remaining franchise agreement while the

parties attempted to negotiate a renewal. Despite a few extensions, no renewal resulted and the last franchise agreement, for the "Gold Coast" territory, expired at the end of May in 2002.

After the franchise agreements expired, Sibbitt Enterprises continued its bioremediation business, servicing many of the same customers and providing the same services as before. For a period of time, Sibbitt Enterprises even continued to have the Environmental Biotech sign displayed outside its business premises. In part, this precipitated the present lawsuit.

### 3.   The Lawsuit and Jury Verdict

In December of 2002, EBI sued Sibbitt Enterprises, Mr. Sibbitt and Mrs. Sibbitt for trademark infringement and breach of the franchise agreement, among other claims. (Doc. # 1). Sibbitt Enterprises, Mr. Sibbitt and Mrs. Sibbitt counterclaimed against EBI for breach of contract, breach of fiduciary duty and tortious interference. (Doc. # 24).

A jury heard the parties' claims against one another in November of 2004. (Doc. ## 73, 74, 80, 81). The jury's

4

verdict was in favor of Sibbitt Enterprises, Mr. Sibbitt and Mrs. Sibbitt on all claims and counterclaims. The jury awarded to them the lump sum of $1,224,500 as damages. (Doc. # 89).

On January 25, 2005, the Court granted in part and denied in part, EBI's Motion for New Trial and Alternative Motion for Remittitur. (Doc. ## 107, 109). Although declining to disturb the jury's liability determinations, the Court found the award of damages on the counterclaim to be the result of conjecture and improper measures and could not be supported by competent evidence. The Court therefore ordered a retrial on damages only. (Doc. # 109 at 12).

   **B.   The Damages Retrial**

On November 20, 2007, the Court issued a new scheduling order, setting this matter for retrial. (Doc. # 135). On January 28, 2008, the parties stipulated under Rule 38(a), Fed. R. Civ. P., that the retrial could occur by the Court sitting without a jury. (Doc. # 141). This non-jury trial on damages only commenced and concluded on August 26, 2008. (Doc. # 173).

Two interim developments reduced the scope of the

inquiry at the damages retrial.  First, on April 24, 2008, the Court granted EBI's motion for partial summary judgment which had been unopposed. (Doc. # 155).  The partial summary judgment found that Mr. Sibbitt and Mrs. Sibbitt lacked standing to recover damages on their counterclaims. (<u>Id.</u>). Second, Sibbitt Enterprises, the remaining party seeking damages, withdrew its claims based on the tortious interference count of the counterclaim and a host of other items of damages which had been pursued at the original trial. (Doc. # 170 at 3).  Specifically, Sibbitt Enterprises represented to the Court and its opponent on the eve of trial in its brief:

> Sibbitt Enterprises, Inc. is not proceeding on any theory relating to the tortious interference claim, the issue of un-refunded taxes, miscellaneous loss [of] revenue or the value of the Cross State Environmental profits.  Sibbitt Enterprises, Inc., is proceeding solely upon the value of the franchises which were wrongly terminated based on the jury finding that there had been a breach of the franchise agreement and breach of fiduciary duty by [EBI].

(Doc. # 170 at 3).  Sibbitt Enterprises thus proceeded to the damages retrial on the sole theory that its damages were to be measured by the "value of the franchises." (<u>Id.</u>).  In

his opening statement to the Court during the non-jury trial, counsel for Sibbitt Enterprises stated: "[W]e have narrowed the issues down for trial today, to include simply the value of the franchises at the time that the franchise agreements were wrongfully terminated." (Doc. # 180 at 9:6-9).

During the retrial, Sibbitt Enterprises first offered the testimony of Kenton Thompson as an expert in business valuation. (Doc. # 180 at 16-62). Mr. Thompson opined that the value of Sibbitt Enterprises was approximately $58,000 as of May 31, 2002--presumed by him to be the date of nonrenewal. (Doc. # 180 at 19:1-4). Mr. Thompson did not value the business as of any other time or offer any alternative measure or amount of damages (such as lost profits). Mr. Thompson was not provided with information about Sibbitt Enterprises' operations after the date of May 31, 2002, so he was not able to testify about profits (or lost profits) after the breach of the franchise agreement. (Doc. # 180 at 44:1-11).

Sibbitt Enterprises also offered the testimony of Mr. Sibbitt, president of Sibbitt Enterprises. During Mr.

Sibbitt's testimony, he acknowledged that Sibbitt
Enterprises continued in the bioremediation business well
after the expiration of the last franchise agreement in May
of 2002. (Doc. # 180 at 85:16-19). He also testified that
Sibbitt Enterprises continues in this line of business
through the present day. (Doc. # 180 at 86:1-15). This
included Sibbitt Enterprises' servicing of Patrick Air Force
Base account, Sibbitt Enterprises' largest account, through
at least September of 2003, as well as at least a half-dozen
other bioremediation customers gained during the term of the
franchises. (Doc. # 180 at 82:24-25; 83:1-25; 84:1-25).
Consequently, for each of the six years following the last
of the franchise expirations, Sibbitt Enterprises derived
regular income from the rendering of bioremediation
services. (Doc. # 180 at 85:1-25; 86:1-25). During this
time, Sibbitt Enterprises also used some of the same
equipment as before and was still using the same service
truck in use during the term of the franchises as of the
date of the trial. (Doc. # 180 at 92:9-25).

During the retrial, EBI moved to strike Mr. Thompson's
testimony and also moved for judgment on partial findings

under Rule 52(c), Fed. R. Civ. P.

## II. Conclusions of Law

### A. Sibbitt Enterprises is not Entitled to Recover the Value of its Business or Lost Profits

In stark contrast with its trial brief representation that Sibbitt Enterprises "is proceeding solely upon the value of the franchises which were wrongfully terminated" (Doc. # 170 at 3), Sibbitt Enterprises asserts in its closing argument and proposed findings of fact and conclusions of law that:

> This Court can award damages on three different bases. Those are:
> 1. Value of the EBI Franchises on their date of destruction which is $58,000 according to the testimony of Kenton Thompson;
> 2. Sibbits['] lost profit in 2002 of $22,478.43 which is directly attributable to EBI's breach; or
> 3. A loss of business value of at least $8,034.00 which reflected a loss of business revenue of 59% in just the first month after EBI's wrongful breach. Mr. Sibbitt testified that EBI's wrongful termination had an immediate and direct impact on the business.

(Doc. # 182 at 7).

Sibbitt Enterprises' attempt to recapture specifically abandoned claims, i.e. lost profits and reduction in value

of its business, after the non-jury trial is not successful.

In its trial brief, Sibbitt Enterprises indicated that it
"does not disagree that it cannot recover loss profits [sic]
and the value of the business as those remedies are mutually
exclusive." (Doc. # 170 at 6).  Further, as indicated above,
Sibbitt Enterprises represented that it desired to proceed
solely upon the value of the franchises.  (Doc. # 170 at 3).
Sibbitt Enterprises abandoned its lost profits claims, and
to allow such a claim after the close of the non-jury trial
would be unfair to EBI.  However, in the interests of
justice this Court will discuss lost profits, <u>infra</u>.

Sibbitt Enterprises' request for the value of its
franchise is unsuccessful.  Under Florida law, the value of
a plaintiff's business is the appropriate measure of damages
only where the plaintiff's business was, in fact, destroyed.
<u>See</u> <u>Aetna Life & Cas. Co. v. Little</u>, 384 So. 2d 213, 216
(Fla. 4th DCA 1980).  The parties agreed on this principle
of law in their Joint Pretrial Statement. (Doc. # 159 at 7).

Sibbitt Enterprises has not demonstrated the
destruction of its business as of May 31, 2002, or for that
matter, any other date.  To the contrary, as noted already,

Sibbitt Enterprises continues providing bioremediation services to this day, oftentimes to the same customers and using the same equipment as it had during the term of the franchise agreement.

Sibbitt Enterprises' claim that it is entitled to recover the value of its business because its "ability to be a franchisee was destroyed by [EBI's] breach of the franchise agreement and breach of fiduciary duty . . . ." is without merit. (Doc. # 170 at 5). The decision in <u>KMS Restaurant Corporation v. Wendy's International, Inc.</u>, 194 Fed. App'x 591, 601-602 (11th Cir. 2006), is both instructive and dispositive on this issue. In that case, Wendy's, the subject of a substantial jury award, argued on appeal that the trial court erred by refusing a jury instruction on damages recoverable for the total destruction of a business. <u>Id.</u> at 601. The Eleventh Circuit rejected Wendy's argument, finding that the value-of-the-business measure of damages was inapplicable because the businesses at issue were not destroyed: even though the plaintiffs could not operate their businesses as a Wendy's franchisee, the business nevertheless continued in operation as

11

restaurants. Thus, "the 'business' was not completely destroyed." Id. at 601-602.

However, the Eleventh Circuit did clarify the role of lost profits in Florida law as follows: "If a business is completely destroyed, the proper measure of damages is the market value of the business on the date of the loss. If the business is not completely destroyed, then it may recover lost profits. A business may not recover both lost profits and the market value of the business." Id. at 601.

In this case, the Court concludes that Sibbitt Enterprises' business was not completely destroyed as of May 31, 2002, or any other date, and Sibbitt Enterprises' proper measure of damages, if any, is lost profits.

Sibbitt Enterprises, however, did not present evidence sufficient to justify an award of lost profits in this case. As stated in KMS, "in order for a business to recover lost prospective profits, it must prove not only that the defendant's action caused the damage but also that there is some standard by which the amount of damages may be adequately determined." Id. at 602 (citing W.W. Gay Mech.

12

<u>Contractor, Inc. v. Warfside Two, Ltd.</u>, 545 So. 2d 1348,

1351 (Fla. 1989)).

Further, with respect to lost profits, the Eleventh

Circuit has noted:

> It is settled under Florida law that lost profit
> damages, like all damages, cannot be speculative
> and must be proved with reasonable certainty.  And
> sine proving lost profits invariably includes some
> element of prediction about how the market would
> have behaved but for the defendant's tortious act
> or breach, Florida courts have often noted that
> proving lost profits damages is difficult, but by
> no means impossible.

<u>Nebula Glass Int'l, Inc. v. Reichhold, Inc.</u>, 454 F.3d 1203,

1213 (11th Cir. 2006) (internal citations omitted).

Florida law also requires that assumptions used to

support the conclusions of lost profit damages be reasonably

certain, "not mere best case scenario predictions." <u>Sun Ins.

Mkt. Network, Inc. v. AIG Life Ins. Co.</u>, 254 F. Supp. 2d

1239, 1247 (M.D. Fla. 2003).  "For example, when a defendant

has the right to terminate the contract or sales of the

product in issue, future events are uncertain." <u>Id.</u> (citing

<u>Brough v. Imperial Sterling, Ltd.</u>, 297 F.3d 1172 (11th Cir.

2002)).  In determining whether a plaintiff's alleged lost

profits were reasonably certain to arise, the Eleventh

13

Circuit has ruled that "the expenses incurred to produce the net profits must be established in specific dollar amounts." Ad-Vantage Tel. Directory Consultants, Inc. v. GTE Directories Corp., 849 F.2d 1336, 1351 (11th Cir. 1987). Further, "if the plaintiff presents evidence only of gross receipts or fails to prove expenses with some specificity, an award of damages relating to lost profits will be reversed." Clayton v. Howard Johnson Franchise Sys., Inc., 954 F.2d 645, 652 (11th Cir. 1992). "While an inability to provide an exact or precise amount will not preclude recovery, the evidence must establish lost profits with reasonable certainty such that an impartial and prudent mind would be satisfied." Id.

In the present case, the jury found that EBI breached its franchise agreement with Sibbitt Enterprises, and this Court does not overturn that finding. However, in order to justify an award of lost profits, Sibbitt Enterprises should have presented reasonably certain evidence of its lost profits during the non-jury trial. Instead, Sibbitt Enterprises focused on the value of the enterprise, and it did not present lost profits evidence or analysis with any

14

degree of certainty of specificity. Counsel for EBI correctly noted at the conclusion of the non-jury trial that "the correct measure of damages, if any are to be had . . . would be whatever lost profits or diminution there might be. There's been no proof or evidence offered of that at any point in time." (Doc. # 180 at 148:17-21). Devoid of competent lost profits analysis, Sibbitt Enterprises' evidence was premised on a measure of recovery (value of the business) inapplicable to the facts of this case. The Court also finds that, even if the value of Sibbitt Enterprises' business were an appropriate measure of damages, it has failed to offer competent evidence proving its value as of May 31, 2002.

**B. <u>Sibbitt Enterprises' Valuation Evidence Is Unreliable</u>**

As noted, the only evidence of damages offered by Sibbitt Enterprises was the testimony of Mr. Thompson, who opined that "the value of the franchise [on] May 31, 2002, . . . was worth approximately $58,000," (Doc. # 180 at 19:1-4) and the testimony of Mr. Sibbitt. Although Mr. Thompson was qualified as an expert in business valuation, the Court

determines that his testimony was unreliable and accords the testimony little weight.

As part of his analysis, Mr. Thompson projected Sibbitt Enterprises' future cash flows, but relied only on actual financial data from the five-month period ending on May 31, 2002, to prepare this projection. (Doc. # 180 at 26:18-25; 27:1-16). Mr. Thompson recognized that if he had relied on any earlier period of income, it would diminish the value of the business; or, in his own words, "it would definitely skew it to the negative." (Doc. # 180 at 27:4). It appears to the Court that Mr. Thompson relied on the five-month period because that was the only information resulting in a favorable valuation of Sibbitt Enterprises and, that was the only information which had been provided by Mr. Sibbitt. (Doc. # 180 at 49:12-13).

A five-month period of income is not a reliable indicator of Sibbitt Enterprises' future cash flow and ultimately its market value as of May 31, 2002. A reasonable investor, the judge of a business' "market value," would likely not value a business based only on earnings from such a small window of time. In assessing

16

value, a reasonable investor would likely consider Sibbitt
Enterprises' income over at least a twelve-month, if not a
two-year, period preceding May 31, 2002.   Mr. Thompson
himself conceded that a five-year income history is the
generally accepted period utilized by business appraisers.
(Doc. # 180 at 47:8-12).   Of course, Sibbitt Enterprises had
been in business for many years before May of 2002, and,
notably, had suffered net operating losses in 1998, 1999,
and 2001. (Doc. # 180 at 48:18-25; 49:1-20).

     Accordingly, Mr. Thompson's valuation opinion is the
product of an unreliable methodology and is accorded little
weight.   See Club Car, Inc. v. Club Car Quebec Imp., Inc.,
362 F.3d 775, 780 (11th Cir. 2004) (striking expert
testimony was proper where trial court "reasonably concluded
[expert's] lost profit calculation was based on flawed
methodology that was unaccepted in the accounting
community"); Susan Fixel, Inc. v. Rosenthal & Rosenthal,
Inc., 921 So. 2d 43, 46 (Fla. 3d DCA 2006) ("It is as
inappropriate to use purely speculative forecasts of future
revenue to determine the market value of a business as it is

17

to use such speculative forecasts in determining future profits.").

The Court also doubts the reliability of the financial statements forming the basis for Mr. Thompson's opinion. The testimony at trial established that Mr. Sibbitt created and produced conflicting financial statements for 2002. One of these statements had been prepared in January 2003, in connection with Sibbitt Enterprises' 2002 tax returns. The other statement, along with the statement reflecting Sibbitt Enteprises' income for January through May 2002, forming much of Mr. Thompson's opinion, had been prepared in November 2006 or December 2007 -- at times when Sibbitt Enterprises was responding to EBI's damages discovery and retaining Mr. Thompson to testify. It was these later-prepared statements that Mr. Sibbitt provided to Mr. Thompson. (Doc. # 180 at 62:21-25; 63:1-25; 64:1-5). Mr. Thompson admitted that Sibbitt Enterprises' financial statements otherwise for the same periods of time were inexplicably conflicting and materially different from one another when shown to him during cross examination. (Id.). It is notable that EBI's expert, Stephen E. Cohen, could not

follow Mr. Thompson's mathematical computations, and he determined that they were erroneous. (Doc. # 180 at 160:15-23).

Mr. Thompson also acknowledged that he was not able to confirm the information on any of the financial statements by comparing them against the tax returns for the same period, because Mr. Sibbitt did not provide the tax returns. (Doc. # 180 at 36:6-23).

Most tellingly, when Mr. Sibbitt took the stand to address these inconsistencies, he admitted that some of the financial statement provided to Mr. Thompson were inaccurate. (Doc. # 180 at 115:8-25; 116:1-25). Mr. Sibbitt surmised that he made a mistake when creating the document in response to EBI's damages discovery. (Doc. # 180 at 117:13). This Court assumes that Mr. Sibbitt did not intentionally alter the financial statements. However, the Court finds that the inaccurate financial statements cannot form the basis of reliable testimony on the valuation of a business.

The Court will not award any amount of damages based on an expert's opinion that employs a suspect methodology and

relies on admittedly inaccurate data, especially where that opinion is not supported by any evidence in the record.  See Brooke Group Ltd. v. Brown & Williamson Tobacco Corp., 509 U.S. 209, 242 (1993) ("Expert testimony is useful as a guide to interpreting . . . facts, but it is not a substitute for them."); Alphamed Pharms. v. Arriva Pharms., 432 F. Supp. 2d 1319, 1351 (S.D. Fla. 2006) ("Simply because [Plaintiff's expert] assumed the following facts did not establish that any of these facts was proven to a reasonable certainty.").

Mr. Thompson's calculations were also suspect.  Mr. Thompson failed to fully explain the mathematical analysis he employed in reaching his conclusion of value.  When questioned during cross-examination, Mr. Thompson stated that he could not recall the specifics of his analysis and responded that he did not have his calculations in front of him.  See McClain v. Metabolife Int'l, Inc., 401 F.3d 1233, 1245 (11th Cir. 2005) ("[A]ny step that renders the analysis unreliable under the Daubert factors renders the expert's testimony inadmissible.") (quoting Amorgianos v. Amtrak, 303 F.3d 256, 267 (2nd Cir. 2002)); Hudgens v. Bell Helicopter, 328 F.3d 1329, 1344 (11th Cir. 2003) ("[E]xpert's failure to

explain the basis for an important inference mandates
exclusion of his or her opinion."). Sibbitt Enterprises
failed to offer competent evidence adequately supporting Mr.
Thompson's conclusions.

## III. **Conclusion and Decision**

In sum, there is an absence of competent evidence
establishing that Sibbitt Enterprises suffered any amount of
damages as a proximate and natural consequence of EBI's
breach of contract or breach of fiduciary duty. Recovery of
the value of Sibbitt Enterprises' business is inappropriate
because its business was, in fact, not destroyed. Lost
profits are the correct measure of Sibbitt Enterprises'
damages, but Sibitt Enterprises (1) abandoned lost profits
via its trial brief and (2) failed to present competent
evidence to substantiate lost profits damages.

Moreover, the expert testimony concerning the value of
Sibbitt Enterprises was unreliable in methodology and
foundation and is therefore given little weight by the
Court.

As for EBI's motion to strike Mr. Thompson's testimony,
this Court denies the motion.  While this Court has not

credited the testimony of Mr. Thompson, it is not necessary to strike his testimony from the record.  Further, the Court denies EBI's motion for judgment on partial findings pursuant to Rule 52(c), Fed. R. Civ. P.  Rule 52 was amended in 1991 to include section (c), which permits a district court to enter a judgment as a matter of law before the end of a non-jury trial. Fed. R. Civ. P. Advisory Committee's Note.  This Court rendered its decision at the conclusion of the non-jury trial, after hearing both sides and evaluating all of the evidence on file.  Accordingly, Rule 52(c), Fed. R. Civ. P., is not applicable.

Accordingly, it is

**ORDERED, ADJUDGED, and DECREED:**

(1) EBI's motion to strike Kenton Thompson's testimony (Doc. # 176) is **DENIED**.

(2) EBI's motion for a judgment on partial findings pursuant to Rule 52(c), Fed. R. Civ. P., (Doc. # 177) is **DENIED.**

(3) The Clerk shall enter Judgment pursuant to Rule 58, Fed. R. Civ. P., as follows:

Defendants, Sibbitt Enterprises, Inc., Larry Sibbitt,

and Vicki L. Sibbitt, take nothing by their counterclaim and Plaintiff, Environmental Biotech, Inc., takes nothing by its complaint.

(4) The Clerk shall close the case.

**DONE** and **ORDERED** in Ft. Myers, Florida, this <u>24th</u> day of November, 2008.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE


Copies:

All Counsel of Record

23